UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| FAIRSHARE SOLUTIONS, LLC, | : | |
|     *Plaintiff*, | : | |
| | : | |
| Vs. | : | C.A. No. 1:24-cv-00140-WES-PAS |
| | : | |
| MARGARET G. VAN SCIVER, in her | : | |
| capacity as EXECUTRIX OF THE | : | |
| ESTATE OF HARRY B. VAN SCIVER and | : | |
| MARGARET G. VAN SCIVER, individually, | : | |
|     *Defendants*. | : | |

## DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIM

Now come Defendants, Margaret G. Van Sciver, in her capacity as Executrix of the Estate of Harry B. Van Sciver and Margaret G. Van Sciver, individually (hereinafter collectively "Defendants") and respond to the correspondingly numbered paragraphs of Plaintiff, Fairshare Solutions, LLC's ("Plaintiff") Complaint as follows:

**I.  INTRODUCTION**

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

**II.  PARTIES**

2. Admit that Plaintiff is registered as a domestic limited liability company with the Rhode Island Secretary of State's Office.

3. Admit the allegations contained in this paragraph.

4. Admit the allegations contained in this paragraph.

### III. JURISDICTION AND VENUE

5. The allegations contained in this paragraph constitute legal conclusions for which no response is necessary. To the extent a response is necessary, the allegations are denied.

6. The allegations contained in this paragraph constitute legal conclusions for which no response is necessary. To the extent a response is necessary, the allegations are denied.

7. The allegations contained in this paragraph constitute legal conclusions for which no response is necessary. To the extent a response is necessary, the allegations are denied.

8. The allegations contained in this paragraph constitute legal conclusions for which no response is necessary. To the extent a response is necessary, the allegations are denied.

### IV. FACTS

#### A. INSURANCE POLICY

9. Admit that Plaintiff was listed as the primary owner and primary beneficiary on a Transamerica Life Insurance Company Policy for the insured decedent Harry B. Van Sciver, however denied to the extent this paragraph denies the existence of, and/or the express language provided for in the "Resolution Regarding Life Insurance and Use of Life Insurance Proceeds," executed on June 4, 2021 by Harry B. Van Sciver and Dennis F. Rogers, as the sole members of Fairshare Solutions, LLC.

10. Admit that Plaintiff is listed as the policy owner.

11. Admit the allegations contained in this paragraph.

12. Admit the allegations contained in this paragraph.

13. Deny the allegations contained in this paragraph.

14. Deny the allegations contained in this paragraph.

15. Admit that an Operating Agreement of Fairshare Solutions, LLC was executed on April 29, 2020.

16. Admit that an Operating Agreement of Fairshare Solutions, LLC was executed on April 29, 2020, but deny the remaining allegations contained in this paragraph as the document speaks for itself.

17. Deny the allegations contained in this paragraph.

18. Admit the allegations contained in this paragraph.

19. Admit the allegations contained in this paragraph.

20. Admit that Defendants requested distributions of the life insurance policy proceeds in accordance with the terms of the "Resolution Regarding Life Insurance and Use of Life Insurance Proceeds," executed on June 4, 2021 by Harry B. Van Sciver and Dennis F. Rogers, as the sole members of Fairshare Solutions, LLC.

21. Denied as to the legal conclusion that Plaintiff is entitled to a declaration that it has no obligation to turn over the entirety of the proceeds under the Policy to Defendants.

## COUNT I
### *Declaratory Judgment – Ms. Van Sciver*

22. Defendants incorporate their responses to paragraphs 1 through 21 of Plaintiff's Complaint as if fully set forth herein.

23. Deny the allegations contained in this paragraph.

24. Deny the allegations contained in this paragraph.

## COUNT II
### *Declaratory Judgment – Estate*

25. Defendants incorporate their responses to paragraphs 1 through 24 of Plaintiff's Complaint as if fully set forth herein.

26. Deny the allegations contained in this paragraph.

27. Deny the allegations contained in this paragraph.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its failure to mitigate damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its own breach of contract including its failure to comply with the duly executed "Resolution Regarding Life Insurance and Use of Life Insurance Proceeds."

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's purported damages, if any, were not caused by any wrongful conduct of these Defendants.

WHEREFORE, Defendants request that this Honorable Court deny and dismiss Plaintiff's Complaint and enter judgment in Defendants' favor and award fees, costs, and any other relief deemed proper and just.

**Defendants hereby demand a trial by jury on all counts so triable.**

                                        Defendants,
Margaret G. Van Sciver, in her capacity as
Executrix of the Estate of Harry B. Van Sciver and
Margaret G. Van Sciver, individually,
By their Attorneys,

 /s/ *Matthew T. Oliverio*
<u>/s/ *Gina Renzulli Lemay*</u>
Matthew T. Oliverio, Esquire (#3372)
Gina Renzulli Lemay, Esquire (#7405)
OLIVERIO & MARCACCIO LLP
30 Romano Vineyard Way, Suite 109
North Kingstown, RI 02852
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com
grl@om-rilaw.com

## COUNTERCLAIM OF DEFENDANTS, MARGARET G. VAN SCIVER, IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF HARRY B. VAN SCIVER AND MARGARET G. VAN SCIVER, INDIVIDUALLY

Now come Defendants/Counterclaim Plaintiffs, Margaret G. Van Sciver, in her capacity as Executrix of the Estate of Harry B. Van Sciver (the "Estate") and Margaret G. Van Sciver, individually ("Margaret") (hereinafter collectively "Defendants/Counterclaim Plaintiffs"), and assert their Counterclaim against Plaintiff/Counterclaim Defendant, Fairshare Solutions, LLC ("Fairshare") as follows:

### Parties and Venue

1.	Margaret is an adult individual residing at 575 Mistic Drive, Marston Mills, Massachusetts.

2.	On or about March 29, 2024, the Barnstable Probate and Family Court of the Commonwealth of Massachusetts granted to Margaret a letter of authority for personal representative in the Estate of Harry Benjamin Van Sciver a/k/a Harry B. Van Sciver, date of death January 8, 2024.  The court accepted for probate the June 7, 2018 Will of Harry Benjamin Van Sciver a/k/a Harry B. Van Sciver.

3.	Fairshare is a Rhode Island limited liability company doing business in the Commonwealth of Pennsylvania and maintaining a principal place of business at 529 Seven Bridges Road, Suite 300, East Stroudsburg, Monroe County, Pennsylvania.

4.	Whitebriar Financial Corporation ("Whitebriar") is a Massachusetts corporation with a principal place of business at 575 Mistic Drive, Marston Mills, Massachusetts.

5.	Dennis F. Rogers ("Rogers") is a member of Fairshare pursuant to the Operating Agreement of Fairshare Solutions, LLC, dated April 29, 2020, and is an adult individual residing

at 2566 Wigwam Park Road, East Stroudsburg, Pennsylvania. (*See* Exhibit 1, Operating Agreement).

6. Rogers is the sole surviving member of Fairshare and the owner of a minority one-third ownership interest. (Exhibit 1 at ¶ 7).

7. Prior to his death on January 8, 2024, Harry B. Van Sciver ("Harry") was a member of Fairshare and the owner of a two-thirds majority ownership interest. (Exhibit 1 at ¶ 7).

8. Venue is proper because Fairshare is registered with the Rhode Island Department of State as a domestic limited liability company.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

## Facts

10. On June 4, 2021, Harry and Roger, as the sole members of Fairshare, executed a Resolution Regarding Life Insurance and Use of Life Insurance Proceeds ("Resolution") that was witnessed by Margaret and Julie A. Rogers. (*See* Exhibit 2, Resolution)

11. The Resolution provides for the purchase of a key man insurance policy on Harry's life from Transamerica Life Insurance Company ("Transamerica"), Policy No. 6601010704, with a death benefit of one-million dollars and no cents ($1,000,000.00) (the "insurance proceeds") (Exhibit 2 at pg. 1).

12. The Resolution also provides for the purchase of a key man insurance policy on Roger's life from New York Life Insurance, Policy No. 47693571, with a death benefit of four-hundred thousand dollars and no cents ($400,000.00). (Exhibit 2 at pg. 2).

13. The Resolution expressly provides that following Harry's death, as the "insured," and upon receipt of the death benefit proceeds by Fairshare, as the "policy owner and primary beneficiary" thereunder, that:

**Fairshare will, in the following order:**

**1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then**

**2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then**

**3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver.**

(Emphasis added) (Exhibit 2 at pg. 2).

14. At the time of Harry's death, on January 8, 2024, this Resolution remained in effect and fully enforceable.

15. Upon information and belief, as of the filing of this Counterclaim, there is no evidence of the Resolution having ever been amended or revoked.

16. The Resolution expressly provides that "[i]t is the express and unanimous intent of the parties executing this Resolution and the parties attesting to it, that no beneficiary of or interested party in or under this Resolution ever shall contest it."  (Exhibit 2 at pg. 2).

17. On or about January 30, 2024, Rogers transmitted a letter to Margaret addressing the key man insurance policy referenced in the Resolution, and stating, in pertinent part, "In accordance with the corporate resolution we had in place, the debt owed to Whitebriar will be taken care of and other debt owed by Fairshare.  Following this process, there remains a surplus

8

amount that, as per our resolution, is designated for you for disbursement at your sole discretion." (*See* Exhibit 3, Rogers Letter of January 30, 2024).

18. Upon information and belief, following Harry's death on January 8, 2024, Rogers, as the sole surviving member of Fairshare, submitted a claim for Harry's death benefit to Transamerica and requested a payment be made to Fairshare.

19. On or about March 8, 2024, Thomas A. Rockwell, Esq., counsel for Margaret and the Estate, sent written correspondence to Rogers and Fairshare advising that the claim form for the Transamerica Policy on the life of Harry had been submitted, and he requested that when Rogers and Fairshare received the life insurance proceeds check that it be endorsed on behalf of Fairshare, but not be deposited, as the proceeds were to be deposited in the law firm's escrow account and then distributed to Margaret per the June 4, 2021 Resolution. (*See* Exhibit 4, Thomas A. Rockwell, Esq. letter dated March 8, 2024).

20. Upon information and belief, in March 2024, Fairshare received a check in excess of one-million dollars and no cents ($1,000,000.00) from Transamerica on the claim for Harry's death benefit.

21. Upon information and belief, Rogers took possession of the insurance proceeds from Transamerica and has not advised Defendants/Counterclaim Plaintiffs as to the location of the entirety of those funds.

22. Rogers has not distributed any of those proceeds to Whitebriar following Harry's death, per the express language of the Resolution. (Exhibit 2).

23. Fairshare has an outstanding debt that is owed to Whitebriar of approximately five-hundred eighty-six thousand nine-hundred-fifty dollars and no cents ($586,950.00), plus interest which continues to accrue on a daily basis.

24. Rogers has not distributed any of those proceeds to Margaret or the Estate for distribution in her sole discretion, per the express language of the Resolution. (Exhibit 2).

25. As required by the Resolution, Margaret is ready, willing, and able to deliver to Fairshare and Rogers, upon payment of the death benefit proceeds from the Transamerica Policy, a release of all interest of Margaret and/or the Estate "in or to Fairshare back to Fairshare." (Exhibit 2 at pg. 1).

26. Pursuant to the Operating Agreement, by operation of law following Harry's death, his two-thirds ownership interest in Fairshare is assigned to his Estate, through his personal representative, Margaret. (Exhibit 1 at ¶ 27).

27. Margaret, as the personal representative of Harry's Estate, has acquired Harry's two-thirds economic rights and interest in Fairshare. (Exhibit 1 at ¶ 27).

28. On March 21, 2024, Andrew R. Bilodeau, Esq., as counsel to Fairshare, sent a letter to Attorney Rockwell advising that Fairshare did not acknowledge the Resolution of June 4, 2021. (*See* Exhibit 5, Andrew R. Bilodeau, Esq. Letter dated March 21, 2024).

29. Despite demands for accounting by Margaret, Rogers has denied Margaret access to, and has not made any financial records or information related to Fairshare available to Margaret despite her acquisition of Harry's two-thirds economic rights and interest in Fairshare.

## COUNT I
### *Declaratory Judgment*

30. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 29 of their Counterclaim as if fully set forth herein.

31. Defendants/Counterclaim Plaintiffs' rights under the June 4, 2021 Resolution have been affected by Fairshare's refusal to distribute the life insurance proceeds it received from

Transamerica, and an actual and justiciable controversy has arisen between the parties. (Exhibit 2).

32. Defendants/Counterclaim Plaintiffs seek a declaration of their rights, status and other legal relations thereunder in accordance with R.I. Gen. Laws § 9-30-1, *et seq.*

33. Defendants/Counterclaim Plaintiffs seek a declaration from this Court that the life insurance death benefit proceeds that Fairshare received from Transamerica, on the life insurance policy for Harry, shall be distributed to Margaret and/or the Estate pursuant to the Resolution entered into on June 4, 2021. (Exhibit 2).

34. Nothing contained in the express and unambiguous language contained in the June 4, 2021 Resolution entitled Fairshare to retain said proceeds. (Exhibit 2).

35. Fairshare's refusal to distribute the life insurance proceeds pursuant to the Resolution has caused the Defendants/Counterclaim Plaintiffs to suffer damages.

## COUNT II
### *Breach of Contract*

36. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 35 of their Counterclaim as if fully set forth herein.

37. On June 4, 2021, the then two members of Fairshare knowingly entered into and executed the Resolution attached to this Counterclaim as Exhibit 2.

38. Said Resolution remained in full force and effect at the time that Harry died on January 8, 2024.

39. Per the Resolution, the insurance proceeds received as a death benefit for Harry were to be used by Fairshare in the following manner:

> **1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then**

11

**2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then**

**3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver.**

(Emphasis added) (Exhibit 2 at pg. 2).

40. Following Harry's death, Rogers, as the sole surviving member of Fairshare, acknowledged both the existence of, and terms of distribution of the insurance proceeds as set forth in the duly executed Resolution, in written correspondence he sent to Margaret on January 30, 2024. (Exhibit 3).

41. Despite this acknowledgement, neither Fairshare nor Rogers has distributed any of the insurance proceeds in accordance with the terms of the Resolution.

42. Fairshare has not distributed the insurance proceeds in any of the manners set forth in the Resolution.

43. Fairshare owes an outstanding debt to Whitebriar, which is acknowledged in the Resolution, and no payments from those insurance proceeds have been made to satisfy that debt.

44. Fairshare has breached its duties and obligations, as set forth in the Resolution and as a result Defendants/Counterclaim Plaintiffs have suffered damages.

## COUNT III
*Conversion*

45. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 44 of their Counterclaim as if fully set forth herein.

46. Fairshare received the insurance proceeds from Transamerica on the death benefit claim submitted following Harry's death.

47. Fairshare knowingly deposited and/or otherwise took control of the insurance proceeds without the knowledge and consent of Margaret and/or the Estate.

48. Fairshare knowingly converted said insurance proceeds despite the express language of the Resolution, executed by Harry and Rogers on June 4, 2021, directly that said proceeds were to be used to: (i) pay all monies Fairshare owed to Whitebriar; (ii) pay to the Estate any monies Fairshare owed to Harry or his Estate; and (iii) pay any remaining balance of the insurance proceeds to Margaret. (Exhibit 2).

49. Defendants/Counterclaim Plaintiffs have not received any of the more than $1,000,000.00 in insurance proceeds that Fairshare obtained from Transamerica.

50. Defendants/Counterclaim Plaintiffs have a legal right to these insurance proceeds pursuant to the Resolution dated June 4, 2021. (Exhibit 2).

51. Defendants/Counterclaim Plaintiffs did not consent to Fairshare obtaining, depositing and controlling these insurance proceeds for its use.

52. Defendants/Counterclaim Plaintiffs have requested a distribution of said insurance proceeds from Fairshare and Fairshare, by and through Rogers, have refused to distribute said proceeds.

53. The Defendants/Counterclaim Plaintiffs have suffered damages as a result of Fairshare's conduct.

**COUNT IV**
*Fraud*

54. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 53 of their Counterclaim as if fully set forth herein.

55. Pursuant to the Resolution, Fairshare paid life insurance premiums for a one-million-dollar ($1,000,000.00) death benefit policy taken out on behalf of Harry.

56. The two sole members of Fairshare executed the Resolution expressly agreeing to the terms set forth therein, and said Resolution was witnessed by Margaret and Julie A. Rogers.

57. Those terms included that following Harry's death and Fairshare's receipt of the insurance proceeds from Transamerica, Fairshare would, in the following order:

> **1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then**
>
> **2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then**
>
> **3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver.**

(Emphasis added) (Exhibit 2 at pg. 2).

58. Fairshare, by and through its sole surviving member (Rogers), who is a signatory to the Resolution, refuses to distribute the insurance proceeds to Defendants/Counterclaim Plaintiffs in accordance with the terms of the Resolution.

59. Fairshare, by agreeing to pay the insurance proceeds on the Transamerica policy for Harry's death benefit, falsely represented that it would abide by the terms of the Resolution whose purpose was to satisfy Fairshare's outstanding debts and/or to distribute any surplus thereafter to Margaret and/or the Estate.

60. This false representation induced Harry to enter into the Resolution, which was intended to pay Fairshare's debts owed to Whitebriar and/or any other entity, and to benefit Margaret and/or his Estate.

61. As a result of Fairshare's, by and through its sole surviving member (Rogers), refusal to distribute the insurance proceeds per the terms of the Resolution, the Defendants/Counterclaim Plaintiffs have been damaged.

## COUNT V
*Tortious Interference with Contractual Relations*

62. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 61 of their Counterclaim as if fully set forth herein.

63. On June 4, 2021, the then two sole members of Fairshare knowingly entered into and executed the Resolution attached to this Counterclaim as Exhibit 2.

64. Said Resolution remained in full force and effect at the time that Harry died on January 8, 2024.

65. Per the Resolution, the insurance proceeds received as a death benefit for Harry were to be used by Fairshare in the following manner:

**1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then**

**2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then**

**3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver.**

(Emphasis added) (Exhibit 2 at pg. 2).

66. Following Harry's death, Rogers, as the sole surviving member of Fairshare, acknowledged both the existence of, and terms of distribution set forth in the duly executed Resolution, in written correspondence he sent to Margaret on January 30, 2024. (Exhibit 3).

67. Despite this acknowledgement, neither Fairshare nor Rogers has distributed any of the insurance proceeds in accordance with the terms of the Resolution and has intentionally interfered with distributions to Whitebriar, Margaret and/or the Estate.

68. Fairshare has refused to distribute the insurance proceeds in any of the manners set forth in the Resolution.

69. Instead, Fairshare filed the within litigation seeking a declaration that it has no obligation to turn over the insurance proceeds to either Margaret or the Estate.

70. Fairshare has asserted no legally cognizable privilege or other legal basis for refusing to abide by the terms of the Resolution.

71. The Defendants/Counterclaim Plaintiffs have suffered damages as a result of Fairshare's conduct.

## COUNT VI
*Duty to Provide An Accounting*

72. Defendants/Counterclaim Plaintiffs incorporate and repeat the allegations contained in paragraphs 1 through 71 of their Counterclaim as if fully set forth herein.

73. Upon Harry's passing, Margaret acquired his two-thirds majority economic rights and interest in Fairshare.

74. As the majority member, Margaret is entitled to review the financial and accounting records, books, ledgers, debts and obligations, and any other records of Fairshare.

75. Fairshare, by and through its minority member, Rogers, has denied Margaret any and all access to financial and accounting records, books, ledgers, debts and obligations, and any other records of Fairshare.

76. Fairshare, by and through its minority member, Rogers, has refused to provide Margaret any information as to the location of the entirety of the insurance proceeds Fairshare received from Transamerica.

WHEREFORE, Defendants/Counterclaim Plaintiffs seek judgment against Fairshare, and request that this Honorable Court award the following relief:

- A. A declaration that pursuant to the duly executed Resolution, dated June 4, 2021, Fairshare must distribute all of the life insurance proceeds it received from Transamerica to Margaret and/or the Estate forthwith.

- B. Judgment against Fairshare that Fairshare knowingly breached the terms of the Resolution duly entered by Harry and Rogers on June 4, 2021, and order that Fairshare distribute the insurance proceeds to Defendants/Counterclaim Plaintiffs pursuant to the Resolution duly executed by the members of Fairshare on June 4, 2021.

- C. Judgment against Fairshare that it has converted the insurance proceeds in contravention of the terms of the Resolution, and without the consent of Defendants/Counterclaim Plaintiffs who were to receive said proceeds in accordance with the June 4, 2021 Resolution.

- D. Judgment against Fairshare that Fairshare committed fraud by agreeing to pay life insurance premiums under the Resolution, entered into by Harry and Rogers on June 4, 2021, that the members relied upon that representation, and Fairshare has now refused to distribute the life insurance proceeds in the manner prescribed thereunder to the detriment of the Defendants/Counterclaim Plaintiffs.

- E. Issuance of a preliminary and permanent injunction enjoining Fairshare from using, distributing, or otherwise further converting the insurance proceeds without appropriate approval by this Court.

- F. Order Fairshare to provide Margaret with an accounting of Fairshare's income, debts and any other financial obligations.

G. Order Fairshare to pay the reasonable costs, attorney's fees and expenses that Margaret and the Estate incurred in the defense of this litigation, and any other relief deemed proper and just.

**Defendants/Counterclaim Plaintiffs hereby demand a trial by jury on all counts so triable.**

Defendants/Counterclaim Plaintiffs,
Margaret G. Van Sciver, in her capacity as
Executrix of the Estate of Harry B. Van Sciver and
Margaret G. Van Sciver, individually,
By their Attorneys,

*/s/ Matthew T. Oliverio*
*/s/ Gina Renzulli Lemay*
Matthew T. Oliverio, Esquire (#3372)
Gina Renzulli Lemay, Esquire (#7405)
OLIVERIO & MARCACCIO LLP
30 Romano Vineyard Way, Suite 109
North Kingstown, RI 02852
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com
grl@om-rilaw.com

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island on the 6th day of June 2024 and is available for viewing and downloading from the Electronic Case Filing system. A copy of the foregoing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to those indicated as nonregistered participants.

*/s/ Matthew T. Oliverio*