# EXHIBIT 1

# OPERATING AGREEMENT of Fairshare Solutions, LLC

This Operating Agreement (the "Agreement") is made and entered into this 29th day of April, 2020 (the "Execution Date"),

**BETWEEN:**

DENNIS F. ROGERS of 2556 Wigwam Park Road, East Stroudsburg, PA 18301

and

HARRY VAN SCIVER of 575 Mistic Drive, Marstons Mills, MA 02648

(each individually a "Member" and collectively the "Members").

**BACKGROUND:**

A. The Members have formed a limited liability company, which limited liability company is called Fairshare Solutions, LLC, and which shall be known hereinafter as the "Company".

B. The terms and conditions of this Agreement will govern the rights, duties, and obligations of the Members with respect to the Company.

**IN CONSIDERATION OF** and as a condition of the Members entering into this Agreement and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Members agree as follows:

### Formation

1. The Members have formed the Company in accordance with the laws of the State of Rhode Island. To the extent that any rights, duties and obligations of the Members are not set forth in this Agreement, then these shall be as stated in the Rhode Island Limited Liability Company Act (the "Act") except as otherwise provided in this Agreement.

Fairshare Operating Agreement page 1 of 17    DFR

## Name and Tax Identification Number

2. The name of the Company is Fairshare Solutions, LLC, and its Federal Tax Identification number is 84-3471830.

## Purpose

3. All general business purposes, including but not limited to the collection and purchase of non-performing and sub-performing consumer credit.

## Term

4. The Company will continue until the earlier of (i) termination as provided in this Agreement or (ii) dissolution as provided in the Act.

## Place of Business

5. The Company presently maintains its primary offices at 529 Seven Bridges Road, Suite 300, East Stroudsburg, PA 18301 (the "Principal Office".) The company presently maintains satellite offices at 2556 Wigwam Park Road, East Stroudsburg, PA 18301, and at 575 Mistic Drive, Marstons Mills, MA 02648. The Company may designate other places of business from time to time.

## Resident Agent

6. Kelly J. Rogers, of 178 Wheeler Avenue, Cranston, Rhode Island 02905 is the Company's "Registered Agent".

## Capital Contributions

7. The following is a list of all members and their Initial Capital Contributions to the Company. Each of the Members agrees to make their Initial Capital Contributions to the Company in full, according to the following terms:

| Member | Contribution Description | Equity Percentage and Voting Percentage |
|---|---|---|
| Dennis F. Rogers | See Exhibit 1 | 33.3% |
| Harry Van Sciver | See Exhibit 1 | 66.7% |

## Allocation of Profit/Losses

8. Subject to the other provisions of this Agreement, the Net Profits or Losses, for tax purposes, will be allocated between the Members in strict accordance with their Equity Percentage described above, as confirmed below:

| Member | Profit / Loss Percentage |
|---|---|
| DENNIS F. ROGERS | 33.3% |
| HARRY VAN SCIVER | 66.7% |

## Distributions

9. Subject to the other provisions of this Agreement, Distributions to Members shall be paid in such amounts and at such times as determined by a Voting Majority of the Members, at their sole discretion.

## Allocation of Profit/Losses

10. A Member's ownership interest in the Company will be considered personal property, and no Member will have priority over any other Member for the allocation of Net Profits or Losses. Notwithstanding the foregoing, the allocations set forth in Section 7 hereinabove shall apply.

## Withdrawal of Contributions

11. No Member will withdraw any portion of their Capital Contribution without the unanimous written consent of the other Members.

## Liability for Contribution

12. A Member's obligation to make their required Capital Contribution, as determined by a Voting Majority of the Members, can only be compromised or released with the written consent of all remaining Members. If a Member does not make a Capital Contribution when it is due, his Equity Percentage shall be reduced pro rata by the shortfall in said Capital Contribution. This option is in addition to and not in lieu of any others rights, including the right to specific performance that the Company may have against the Member. Notwithstanding the foregoing, absent an occurrence of material fraud, or an Unauthorized

Withdrawal as detailed in Section 23 hereinbelow, or gross incompetence, no Member's Equity Percentage shall be reduced below ten percent (10%, the "Equity Floor"), and no Members Equity Percentage shall be increased above ninety percent (90%, the "Equity Cap").

### Additional Contributions

13. Capital Contributions may be amended from time to time, according to the business needs of the Company. However, if additional capital is determined, by a Voting Majority of the Members, to be required and an individual Member is unwilling or unable to meet the additional contribution requirement within a reasonable period (not to exceed thirty days), then the remaining Members may contribute in proportion to the existing Capital Contributions to resolve the amount in default. In such case, the allocation of Net Profits or Losses and the distribution of assets on dissociation or dissolution will be adjusted accordingly, but only within the Equity Floor and Equity Cap limitations set forth hereinabove.

### Loans to the Company

14. Any advance of money to the Company by any Member approved by a voting majority of the Members, may then be deemed a Loan to the Company by that Member, rather than an increase in the Capital Contributions of the Member. If so voted and deemed, then this Loan will be repaid with interest at such rates and terms as are approved by a voting majority of the Members. Repayment of such Loan(s) will have priority over any other payments to Members; accordingly, and absent any default in repayment, this Loan will not entitle the lending Member to any increased share of the Company's profits, nor to a greater voting power.

### Capital Accounts

15. An individual capital account (the "Capital Account") will be maintained for each Member and their Initial Contribution will be credited to this account, as set forth on Exhibit 1. Any Additional Contributions made by any Member will be credited to that Member's individual Capital Account.

### Interest on Capital

16. No borrowing charge or loan interest will be due or payable to any member on their agreed Capital Contributions, inclusive of any agreed Additional Contributions.

### Management

17. Management of this Company is vested in the Members.

### Authority to Bind Company

18. No Member has the authority to bind the Company in contract, to borrow money or to warrant financial performance without the express written consent of a Voting Majority. Notwithstanding the foregoing, this provision shall not apply for purchases, loans or contracts with total consideration of less than Two Thousand Dollars ($2,000).

### Duty of Loyalty

19. Any Member may invest in or engage in any business of any type, except: any business that is similar to the business of the Company and/or (ii) any business that is in direct competition with the Company.

### Duty to Devote Time

20. Each Member will devote such time and attention to the business of the Company as the Voting Majority of the Members shall from time to time determine for the successful conduct of the Company's business.

### Member Meetings

21. A meeting may be called by any Member providing that reasonable written notice has been given to the other Members. Meetings of the Members will be held at least once per year (annually).

### Voting

22. Each Member will have a vote equal to his Equity Percentage on any matter. For the avoidance of doubt, within this Agreement Equity Percentage shall always equal Voting Percentage. Unless otherwise specified herein, votes shall

be decided based on a simple majority; accordingly, one Member and may own a Voting Majority and thereby exercise effective control over the business.

### Admission of New Members

23. A new Member may only be admitted to the Company with a Unanimous Vote of the existing Members and by the new Member acknowledging this Agreement in writing, as it may be modified from time-to-time. Any new Member must agree to be bound by all the covenants, terms, and conditions of this Agreement, inclusive of all amendments. Further, a new Member will execute such documents which may be required by the Company, at its sole discretion, to affect the admission of the new Member. Any new Member will receive such Equity Percentage and Voting Percentage in the Company as shall be determined by a Unanimous Vote of the other Members.

### Voluntary Withdrawal of a Member

24. A Member may withdraw voluntarily from the Company upon terms to be mutually agreed if said withdrawal and terms are approved in writing by a Unanimous Vote of the other Member(s). No Member can withdraw from the Company without a Unanimous Vote of the remaining Members. Any withdrawal without the aforesaid Unanimous Vote will be considered an "Unauthorized Withdrawal" and a wrongful dissociation. In the event of any such Unauthorized Withdrawal, the withdrawing Member will forfeit all (100%) of his Equity and his Voting rights, and shall be liable to the remaining Members for any damages incurred by the remaining Members, including but not limited to the loss of future earnings. Notwithstanding the foregoing, it remains incumbent on the withdrawing Member to exercise this dissociation in good faith and to minimize any present or future harm done to the remaining Members as a result of the withdrawal. Furthermore, the voluntary withdrawal of a Member will have no effect upon the continuance of the Company

### Expulsion of a Member

25. A Member may be expelled by a Unanimous Vote of the other Members under any of the following events:: (i) that Member's adjudicated mental incapacity; or (ii) that Member's certified physical disability preventing reasonable

participation in the Company; or (iii) that Member's continuing gross incompetence; or (iv) that Member's material breach of fiduciary duties to the Company or its other Member(s); or (v) criminal conviction of that Member; or (vi) Operation of Law against a Member or a legal judgment against a Member which can reasonably be expected to render material economic harm to the Company. Expulsion of a Member can also occur on application by the Company or another Member, where it has been judicially determined that the Member has engaged in wrongful conduct that had a material adverse and effect on the Company's business, or if the Member being expelled is adjudicated to have willfully and persistently committed a material breach of this Agreement. The Expulsion of a Member will have no effect upon the continuance of the Company. In the event of any Expulsion, the expelled Member will forfeit all (100%) of his ownership of the Company and all Equity and Voting rights, and shall be liable to the remaining Member(s) for any damages sustained or expenses incurred by the remaining Member(s) as a result of his actions while a Member, including but not limited to the loss of future earnings.

**Right of First Purchase**

26. In the event that a Member intends to offer his Interest in the Company for sale, for any reason or for no reason, that selling Member shall first give the Company written notice thereof, and shall then give each remaining Member ninety (90) days prior written notice of his intent to sell. During that 90-day period, the remaining Member(s) shall have an exclusive right to make an offer to the selling Member (or if more than one remaining Member, said rights shall vest pro rata in accordance with each Member's Equity Interest). In the event that no offer(s) is/are made by the other Member(s), or in the event that the selling Member elects not to accept said offer(s), he may then elect to offer his Interests in the Company to any outside party, public or private, individual or business. If the selling Member intends to accept a bona fide offer from an outside party, he must first present a copy of the full, written offer to each remaining Member, who shall thereupon have an additional thirty- (30-) day exclusive right to match said outside offer. If the outside offer is matched, the selling Member must and shall sell to the existing Member(s). If the outside offer is not matched, the selling Party may proceed to sell his interests to the

outside party, strictly conditioned upon the requirement that the Buyer(s) acknowledge this Agreement in writing, as it may be modified from time-to-time, and that the Buyer(s) agree to be bound by all the covenants, terms, and conditions of this Agreement, inclusive of all amendments, and to execute such documents which may be required by the Company, at its sole discretion, to affect the admission of the new Member.

### Assignment of Interest

27. No Member may pledge, assign or otherwise permit any lien or encumbrance upon any Member's financial interest in the Company without the Unanimous Vote of all Members. Notwithstanding the foregoing, in the event that a Member's interest in the Company is transferred or assigned as the result of a court order or Operation of Law, the trustee in bankruptcy or other person acquiring that Member's interest in the Company will only acquire that Member's economic rights and interest, and will not acquire any voting or other rights of that Member, or be admitted as a Member of the Company or have the right to exercise any management or voting interest.

### Valuation of Interests

28. The Company may, by Majority Vote and at its sole discretion, establish a value for the Company, and said value need not be based upon market valuations or upon GAAP.  In the absence of a Vote by the Members setting value, yjen company valuation will be based on the fair market value appraisal of all Company assets (less liabilities), determined in accordance with GAAP. This appraisal will be conducted by an independent accounting firm or business appraisal firm selected by Majority Vote.  The intent of this section is to ensure the survival of the Company despite the withdrawal of any individual Member. In the event of a dissolution of the Company, each Member's financial interest in the Company will be equal to their Equity Interest at the time of dissolution.

### Dissolution

29. The Company may be dissolved by a Unanimous Vote of the Members. The Company will also be dissolved on the occurrence of events specified in the Act.

30. Upon dissolution of the Company and liquidations of Company assets and/or property, and after payment of all selling costs and expenses, the liquidator will distribute the Company assets to the following groups according to the following order of priority:

    a. in satisfaction of liabilities to creditors except Company obligations to current Members; and then
    b. In satisfaction of Company debt obligations to current Members; and then
    c. To the Members based on their then Equity Percentage.

## **Records**

31. The Company will at all times maintain accurate records of the following:

    a. Information regarding the status of the business, including but not limited to: assets, liabilities (current and long term), accounts payable, accounts receivable, cash and cash equivalents, retained earnings, and proforma projections for the next twelve months.

    b. Company balance sheet, compiled in accordance with GAAP.

    c. A copy of the Company's federal, state, and local income tax returns for each year, promptly after becoming available.

    d. Name, federal tax ID number, and last known business, residential, or mailing address of each Member, as well as the date that person became a Member.

    e. A copy of this Agreement and any articles or certificate of formation, as well as all votes, minutes, and amendments, together with any executed copies of any written powers of attorney pursuant to which this

    Agreement, articles or certificate, and any amendments have been executed.

  f. The cash, property, and services contributed to the Company by each Member, along with a description and value, and any contributions that have been agreed to be made in the future.

32. Each Member has the right to demand, within a reasonable period of time, a copy of any of the above records and/or documents for any purpose reasonably related to their activity as a Member of the Company, at their expense.

### Books of Account

33. Accurate and complete books of account of the transactions of the Company will be kept in accordance with GAAP, and at all reasonable times will be available and open to inspection and examination by any Member. The books and records of the Company will reflect all the Company's transactions and will be appropriate and adequate for the business conducted by the Company.

### Banking and Company Funds

34. The funds of the Company will be placed in such investments and banking accounts as will be designated by the Members. All withdrawals from these accounts will be made by the duly authorized officer of the Company, by dual signature or as otherwise determined by a Majority Vote of the Members. Company funds will be held in the name of the Company and will not be commingled with those of any other person or entity.

### Audit

35. Any Member will have the right to request an audit of the Company books. The cost of the audit will be borne by the Company. The audit will be performed by an accounting firm acceptable to the Company, as determined by a Majority Vote. Notwithstanding the foregoing, not more than one (1) audit can be required by any Member in each fiscal year.

### Tax Treatment

36. This Company is intended to be treated as a Limited Liability Company for the purposes of federal and state income tax.

### Tax Elections

37. The Company will make such elections for application of Internal Revenue Service and State tax code(s) as may be determined by a Majority Vote, and shall comply with all Internal Revenue Service and State tax requirements to disclose the name and taxpayer identification number of each Member

### Annual Report

38. As soon as practicable after the close of each fiscal year, the Company will furnish to each Member an annual report showing the condition of the Company, including all information reasonably necessary for the preparation of each Member's income or other tax return insofar as that Member's business with the Company.  This annual report will consist, at a minimum, of (i) a copy of the Company's income tax returns for the fiscal year; and (ii) a K-1 for each Member.

### Goodwill

39. The goodwill of the Company may be assessed by a majority Vote of the Members.  Absent such Vote, goodwill may be assessed as determined by appraisal using generally accepted accounting principles (GAAP).

### Governing Law

40. The Members submit to the jurisdiction of the courts of the State of Rhode Island for the enforcement of this Agreement or any arbitration award or decision arising from this Agreement.  Notwithstanding the foregoing, upon a Unanimous Vote of the Members, and to the extent permitted by law, the Members may submit to any other jurisdiction for the enforcement of this Agreement, or for any arbitration award or decision arising from this Agreement.

### Force Majeure

41. A Member will be free of liability to the Company where the Member is prevented from executing their obligations under this Agreement in whole or in part due to the force majeure, such as earthquake, typhoon, flood, fire, pandemic, terrorist act, war or any other unforeseen and uncontrollable event where the Member has communicated the circumstance of the event to any and all other Members and where the Member has taken any and all appropriate action to satisfy his duties and obligations to the Company and to mitigate the effects of the event.

## Forbidden Acts

42. No Member may do any act in contravention of this Agreement.

43. No Member may permit, intentionally or unintentionally, the assignment of express, implied or apparent Company authority to a third party that is not a Member of the Company.

44. No Member may do any act that would materially impair or obstruct the ordinary business of the Company.

45. No Member will have the right or authority to bind or obligate the Company to any extent with regard to any matter outside the intended purpose of the Company.

46. No Member may confess a judgment against the Company.

47. Any violation of the above forbidden acts will be deemed an Unauthorized Withdrawal, and will be treated accordingly by the Company and the remaining Members.

## Indemnification

48. All Members will be indemnified and held harmless by the Company from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in Company affairs.  A Member will not be entitled to indemnification under this section for liability arising out of gross negligence or

willful misconduct by the Member, or by the breach by the Member of any provisions of this Agreement.

### Liability

49. No Member will be liable to the Company or to any other Member for any mistake, error in judgment, or for any act or omissions believed in good faith to be within the scope of authority conferred or implied by the Agreement or the Company. The Member will be liable only for any and all acts and omissions involving intentional wrongdoing, and in any case will be liable only for actual economic losses suffered by the Company.

### Liability Insurance

50. The Company may acquire insurance on behalf of any Member, employee, agent or other person engaged in Company business, insuring against any liability asserted against them or incurred by them while acting in good faith on behalf of the Company.

### Life Insurance

51. The Company will have the right to acquire life insurance on the lives of any or all of the Members, whenever it is deemed necessary by the Company. Each Member will cooperate fully with the Company in obtaining any such policies of life insurance.

### Amendment of this Agreement

52. No amendment or modification of the Agreement will be valid or effective unless it is a result of a Unanimous Vote, in writing and signed by all Members.

### Title to Company Property

53. Title to all Company property will remain in the name of the Company. No Member or group of Members will have any ownership interest in Company property in whole or in part.

### Miscellaneous

54. Time is of the essence in this Agreement.

55. This Agreement may be executed in counterparts, each of which shall be one in the same instrument.

56. Headings are inserted for the convenience of the Members only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural, and vice versa. Words in the masculine gender include the feminine gender, and vice versa. Words in a neutral gender include the masculine gender and the feminine gender, and vice versa.

57. If any term, covenant, condition or provision of the Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the Members' express intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provisions reasonable and enforceable, and the remainder of this Agreement will in no way be affected, impaired or invalidated as a result.

58. This Agreement contains the entire agreement between or among the Members. All negotiations and understandings have been included in this Agreement. Statements or representations that may have been made by any Member during the negotiation stages of the Agreement, shall have no force or effect in respect to this Agreement. Only the written terms of this Agreement will bind the Members.

59. This Agreement and the terms and conditions contained in this Agreement apply to and are binding upon each member's successors, assigns, executors, administrators, beneficiaries, and representatives.

60. Any notices or delivery required here will be deemed completed when hand-delivered, delivered by agent, or five (5) days after being placed in the postal mail, postage prepaid, to the Members at the addresses contained in this Agreement or such address as the Members may later designate in writing.

61. All of the rights, remedies and benefits provided by the Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law.

## Additional Definitions

62. For the purpose of this Agreement, terms not previously defined hereinabove are defined as follows:

    a. "Additional Contribution" means Capital Contributions, other than Initial Contributions, made by Members to the Company.

    b. "Capital Contribution" means the total amount of cash, property, or services contributed to the Company by any one Member.

    c. "Distributions" means a payment of Company profits to the Members.

    d. "GAAP" means Generally Accepted Accounting Principles, the accounting standards adopted by the U.S. Securities and Exchange Commission.

    e. "Initial Contribution" means the initial Capital Contribution made by any Member to acquire an interest in the Company, as set forth on Exhibit 1.

    f. "Majority Vote" means a vote of more than 50.0% of the Voting Percentage. For the avoidance of doubt, one Member may thereby exercise effective control over the business.

    g. "Member's Interests" means the Member's collective rights, including but not limited to, the Member's right to share in profits. Member's right to a share of Company assets on dissolution of the Company, Member's voting rights, and Member's right to participate in the management of the Company.

h. "Net Profits or Losses" means the net profits or losses of the Company as determined by generally accepted accounting principles (GAAP).

i. "Operation of Law" means rights or duties that are cast upon a party by the law, without any act or agreement on the part of the individual, including, but not limited to, an assignment for the benefit of creditors, a divorce, or a bankruptcy.

j. "Unanimous Vote" means a vote of all (100%) of the Voting Percentage.

k. "Voting Majority" means more than 50.0% of the Voting Percentage. For the avoidance of doubt, one Member may own a Voting Majority and thereby exercise effective control over the business.

l. "Voting Members" means the Members who belong to a membership class that has voting power. Where there is only one class of Members, then those Members constitute the Voting members.

**REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

IN WITNESS WHEREOF the Members have duly affixed their signatures and executed this Agreement on the date first written above.

SIGNED, SEALED, AND DELIVERED
in the presence of:

Witness: _____ (Sign)

Witness Name: ANDREW ROGERS

_____
Dennis F. Rogers (Member)

SIGNED, SEALED, AND DELIVERED
in the presence of:

Witness: _____ (Sign)

Witness Name: Margaret Van Sciver

_____
Harry Van Sciver (Member)