UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FAIRSHARE SOLUTIONS, LLC, : | |
|    *Plaintiff/Counterclaim Defendants* : | |
| : | |
| vs. : | C.A. No. 1:24-cv-00140-WES-PAS |
| : | |
| MARGARET G. VAN SCIVER, in her : | |
| capacity as EXECUTRIX OF THE : | |
| ESTATE OF HARRY B. VAN SCIVER and : | |
| MARGARET G. VAN SCIVER, individually, : | |
|    *Defendants/Counterclaim Plaintiffs/* : | |
|    *Third Party Plaintiffs* : | |
| vs. : | |
| : | |
| DENNIS F. ROGERS, in his capacity as a : | |
| Member of Fairshare Solutions, LLC : | |
|    *Third Party Defendant* | |

**MOTION FOR PREJUDGMENT ATTACHMENT**

Now come Defendants/Counterclaim Plaintiffs and Third Party Plaintiffs, Margaret G. Van Sciver, in her capacity as Executrix of the Estate of Harry B. Van Sciver, and Margaret G. Van Sciver, individually (collectively the "Third-Party Plaintiffs") and pursuant to Rhode Island Superior Court Rules of Civil Procedure Rule 4(m)(3) and R.I. Gen. Laws § 10-5-1, *et seq.* request that this Honorable Court enter an Order for Prejudgment Attachment of all of the life insurance death benefit proceeds that Plaintiff/Counterclaim Defendants, Fairshare Solutions, LLC ("Fairshare") and Third Party Defendant, Dennis F. Rogers ("Rogers"), in his capacity as a Member of Fairshare Solutions, LLC received from Transamerica Life Insurance Company in or about March 2024.

I.     **INTRODUCTION**

This Motion for Prejudgment Attachment is necessitated by the fact that Fairshare and Rogers have taken control of over one-million dollars ($1,000,000.00) in life insurance death benefits, from Transamerica Life Insurance Company ("Transamerica") for a death benefit on the life of Harry B. Sciver ("Harry"). Harry and Rogers, as the sole Members of Fairshare,[1] unanimously entered into a Resolution Regarding Life Insurance and Use Of Life Insurance Proceeds (the "Resolution") on June 4, 2021. (Exhibit 2 to Third Party Complaint). The express language of the Resolution provided that Fairshare will pay the life insurance premiums for a one-million dollar ($1,000,000) "key-man" life insurance policy on Harry, and a four-hundred thousand dollar ($400,000) "key-man" life insurance policy on Rogers. (Exhibit 2 to Third Party Complaint). Harry passed on January 8, 2024, and a death benefit claim was submitted to Transamerica for the insurance proceeds. (Exhibit 4 to the Third Party Complaint). Upon information and belief at some time in March 2024, Fairshare and Rogers received a check for the life insurance proceeds from Transamerica. (*See* Complaint at ¶ 19).

The Resolution provided that following Harry's death and Fairshare's receipt of the death benefit proceeds, Fairshare will, in the following order:

> 1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then

> 2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then

---

[1] Harry and Rogers were parties to an April 29, 2020 Operating Agreement where the two members formed Fairshare. Harry owned a majority two-thirds interest and Rogers owned a minority one-third interest. (Exhibit 1 to the Third Party Complaint).

> 3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver. (Exhibit 2 to Third Party Complaint at pg. 2).

On January 30, 2024, Rogers sent written correspondence to Harry's widow, Margaret G. Van Sciver ("Margaret"), who is also the personal representative of the Estate, and acknowledged the key-man insurance policy secured for Harry and the Resolution, stating, "the debt owed to Whitebriar will be taken care of and other debt owed by Fairshare. Following this process, there remains a surplus amount that, as per our resolution, is designated for you for disbursement at your sole discretion." (Exhibit 3 to the Third Party Complaint). On March 8, 2024, Thomas A. Rockwell, Esq., Margaret's legal counsel, advised Rogers that a claim for Harry's death benefit was submitted to Transamerica and that upon Fairshare receiving the proceeds, the check should be endorsed, *but not deposited*, and then sent to Mr. Rockwell for deposit into his law firm's escrow account for disbursement to Margaret. (Exhibit 4 to the Third Party Complaint). Fairshare and Rogers admit to receiving the insurance proceeds. Rogers has taken control of those funds, failed to distribute them in accordance with the Resolution to Whitebriar[2] and Margaret, and has failed to provide Margaret with an accounting as to the location of the entirety of the more than one-million dollars ($1,000,000) in life insurance proceeds paid out as Harry's death benefit. (Exhibit 2 to Third Party Complaint).

    On or about March 21, 2024, Andrew R. Bilodeau, Esq., counsel for Fairshare and Rogers, sent a letter to Mr. Rockwell stating that "[o]ur client does not acknowledge the existence of any valid and enforceable agreement dated June 4, 2021, that pertains to the

---

[2] As of the filing of the Third Party Complaint, Fairshare has an outstanding debt that is owed to Whitebriar of approximately five-hundred eighty-six thousand nine-hundred-fifty dollars and no cents ($586,950.00), plus interest which continues to accrue on a daily basis. (*See* Third Party Complaint at ¶ 24).

3

distribution of the said death benefits or the transfer of Mr. Van Sciver's membership interests in the Company." (Exhibit 5 to the Third Party Complaint).  On or about April 2, 2024, Fairshare filed the Complaint for Declaratory Judgment asking this Court to declare that it has no obligation to turn over the proceeds from Transamerica to Margaret and/or the Estate.  Margaret and the Estate have filed a Counterclaim against Fairshare, and a Third Party Complaint against Rogers, asserting among other claims, breach of fiduciary duties owed to Fairshare's majority member, fraud and conversion of the insurance proceeds designated be paid to Margaret.

## II.   LEGAL STANDARD

In *Transamerica Life Ins. Co. v. Caramadre*, No. CV 09-470 S, 2017 WL 3822731, at *5 (D.R.I. Aug. 31, 2017) the District Court addressed that prejudgment attachment in federal cases is governed by Rule 64 of the Federal Rules of Civil Procedure, which provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Further noting that under Rhode Island law, prejudgment attachment is addressed by R.I. Gen. Laws § 10-5-1, *et seq.*, and R.I. Super. R. Civ. P. 4(m).  The Rule provides that a motion for prejudgment attachment "shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." R.I. Super. R. Civ. P. 4(m)(3).

The District Court further noted that the overarching statutory provision is R.I. Gen. Laws § 10-5-2, which provides that, "[a] court having jurisdiction over a defendant or his or her assets, including his or her personal estate or real estate, may authorize a plaintiff to attach the defendant's assets, or any part thereof, after hearing on a motion to attach, notice of which has

4

been given to the defendant as provided in this section." *Id.* at *5. If a plaintiff sustains his or its burden with the proper showing, the court "may command the attachment of the goods and chattels of the defendant ... in the hands or possession of any person, copartnership or corporation." R.I. Gen. Laws § 10-5-7. The Superior Court has held that "[a]ttachment for security reasons is appropriate when it appears likely that the plaintiff will have difficulty enforcing the judgment." *Id.* at *5 (citing *Atlantic P.B.S. Inc. v. Long*, C.A. No. 89-1705, 1994 WL 931005, *3 (R.I. Super. Dec. 5, 1994)) (addressing post-judgment attachment).

Additionally, in this litigation Fairshare initiated a declaratory judgment action and thus is seeking equitable relief from this Court, and Margaret and the Estate filed a Counterclaim and a Third Party Complaint also seeking equitable relief. Under R.I. Gen. Laws § 10-5-5, prejudgment attachments in "any civil action of an equitable character," are permitted, and thus the Counterclaim Defendants/Third Party Plaintiffs argue that the insurance proceeds being held by Fairshare and Rogers, as its sole surviving Member, are subject to prejudgment attachment to secure the Counterclaim Defendants/Third Party Plaintiffs' claims for equitable relief.

### III.   ARGUMENT

Under Super. R. Civ. P. 4(m)(3), a motion for prejudgment attachment "shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." Here, the Counterclaim Defendants/Third Party Plaintiffs argue that there is both (1) a probability of judgment being rendered in their favor; and (2) a need for furnishing them security in the amount sought for satisfaction of their claimed relief, plus interest and costs.

5

On June 4, 2021, the then Members of Fairshare, Harry and Rogers, executed a Resolution, witnessed by Margaret and Julie A. Rogers, wherein the Members unanimously agreed that Fairshare would pay all of the premiums for a life insurance policy on behalf of Harry, with a death benefit of one-million dollars ($1,000,000), and on behalf of Rogers, with a death benefit of four-hundred thousand dollars ($400,000). (Exhibit 2 to Third Party Complaint). With regard to Harry, the Resolution further provided that upon his death and Fairshare's receipt of any death benefit, Fairshare will, in the following order:

> 1st Pay all amount(s) that Fairshare owes at that time, if any, to Whitebriar Financial Corporation ("WFC"), including but not limited to loans, notes and consulting fees; and then
>
> 2nd After deducting amounts (if any) owing to Fairshare at that time by Harry Van Sciver or his estate, Fairshare will then pay to the estate of Harry Van Sciver all amount(s) (if any) that Fairshare owes to Harry Van Sciver or his estate, including but not limited to salaries, dividends, distributions, loans, notes or consulting fees; and then
>
> 3rd Pay any remaining balance of the Insurance Proceeds to Margaret Van Sciver, or to any nominee of Margaret Van Sciver (including but not limited to the estate of Harry Van Sciver), at the sole and complete discretion of Margaret Van Sciver. (Exhibit 2 to Third Party Complaint at pg. 2).

At the time of Harry's passing, on January 8, 2024, the Resolution remained fully enforceable and had not been revoked. Rogers acknowledged the Resolution and referred to the insurance policy as a key-man policy in written correspondence he sent to Margaret on January 30, 2024, which was within weeks of Harry's passing. (Exhibit 3 to Third Party Complaint). Rogers further stated as follows: "[i]n accordance with the corporate resolution we had in place, the debt owed to Whitebriar will be taken care of and other debt owed by Fairshare. Following this process, there remains a surplus amount that, as per our resolution, is designated for you for disbursement at your sole discretion." (Exhibit 3 to Third Party Complaint). Thereafter, Attorney Rockwell sent a letter to Rogers, dated March 8, 2024, advising that the claim form for the

6

Transamerica Policy on Harry's life had been submitted to the company. (Exhibit 4 to Third Party Complaint). Attorney Rockwell specifically asked that when Rogers received the insurance check to endorse it on behalf of Fairshare, as its sole surviving Member, "but <u>do not deposit</u> the check into a Fairshare account." *Id.* He advised that he would be depositing the check in his firm's escrow account and then distribute the proceeds to Margaret "in accordance with the June 4, 2021 Agreement." *Id.* The terms of the Resolution are clear and unambiguous and were even acknowledged by Rogers in his initial communication to Margaret. Therefore, the Counterclaim Defendants/Third Party Plaintiffs argue that there is a probability of judgment being entered in their favor.

Upon information and belief, sometime in March 2024, Rogers received a check from Transamerica in an amount in excess of one-million dollars ($1,000,000.00). It is undisputed that Fairshare and Rogers have not remitted any monies to Whitebriar, Margaret or the Estate per the terms of the Resolution. The debt to Whitebriar continues to accrue interest and is currently in excess of six-hundred sixty thousand dollars ($660,000.00). (*See* Third Party Complaint at ¶ 24). Further, as the sole surviving Member of Fairshare, Rogers has not provided any form of accounting as to the total proceeds received from Transamerica nor has he advised Margaret and/or the Estate—who have a two-thirds majority economic rights and interest in Fairshare—as to where the proceeds are currently being held. (Exhibit 1 to the Third Party Complaint at ¶ 27). Furthermore, Attorney Bilodeau then sent a letter dated March 21, 2004 stating that his client "does not acknowledge the existence of any valid and enforceable agreement dated June 4, 2021, that pertains to the distribution of said death benefits or the transfer of Mr. Van Sciver's membership interests in the Company," (Exhibit 5 to Third Party Complaint) and then proceeded to file a Complaint for Declaratory Judgment wherein Fairshare is seeking a declaration from this

Court that it has no obligation to distribute the proceeds to Margaret or the Estate. (*See* Complaint).

Fairshare and Rogers have failed to provide the Counterclaim Defendants/Third Party Plaintiffs with any valid information concerning the total amount of the insurance proceeds that were received from Transamerica and the amount of those insurance proceeds that remain unused. Remarkably, counsel for Plaintiff has maintained that $850,000 of the insurance proceeds has been deposited into his non-interest bearing IOLTA account but has not confirmed or accounted for the whereabouts or use of the remaining six-figure balance of the insurance proceeds. Further, based on Fairshare and Rogers' refusal to distribute the proceeds, their denial of the existence of the Resolution, and their request for a declaration that they have no obligation to distribute same to Margaret and/or the Estate, the Counterclaim Defendants/Third Party Plaintiffs argue that there is an urgent need for this Court to grant the Motion for Prejudgment Attachment and order Fairshare and Rogers to furnish security in the amount sought by the Counterclaim Defendants/Third Party Plaintiffs for satisfaction of their claimed relief, plus interest and costs.

## IV. CONCLUSION

For the foregoing reasons, the Counterclaim Defendants/Third Party Plaintiffs state that they have established both (1) a probability of judgment being rendered in their favor; and (2) a need for furnishing them security in the amount sought for satisfaction of their claimed relief, plus interest and costs, and thus they request that this Court grant the Motion for Prejudgment Attachment and order the issuance of a Prejudgment Writ of Attachment for the total amount of the insurance proceeds Fairshare and Rogers received from Transamerica for the death benefit of Harry to be deposited into an interest-bearing account running in favor of Margaret.

Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs,
Margaret G. Van Sciver, in her capacity as Executrix of the Estate of Harry B. Van Sciver and Margaret G. Van Sciver, individually,
By their Attorneys,

*/s/ Matthew T. Oliverio*
*/s/ Gina Renzulli Lemay*
Matthew T. Oliverio, Esquire (#3372)
Gina Renzulli Lemay, Esquire (#7405)
OLIVERIO & MARCACCIO LLP
30 Romano Vineyard Way, Suite 109
North Kingstown, RI 02852
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com
grl@om-rilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Rhode Island on the 6th day of June 2024 and is available for viewing and downloading from the Electronic Case Filing system. A copy of the foregoing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to those indicated as nonregistered participants.

*/s/ Matthew T. Oliverio*